******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## CHARLES D. GIANETTI *v.* ALAN NEIGHER
## (AC 44320)

Bright, C. J., and Prescott and Moll, Js.

*Syllabus*

The plaintiff physician sought to recover damages from the defendant attorney for his alleged legal malpractice in connection with his representation of the plaintiff in a prior breach of contract action against a hospital. During the pendency of the breach of contract action, the trial court denied the plaintiff's motion for leave to amend his complaint to add a count asserting a violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.). After the court found in favor of the plaintiff and awarded him damages on his breach of contract claims, the defendant commenced a separate action against the hospital, alleging a violation of CUTPA. The trial court in that action rendered judgment for the hospital, concluding that the CUTPA claim was barred by the applicable statute of limitations (§ 42-110g (f)). The plaintiff thereafter brought this legal malpractice action, claiming that the defendant had committed professional negligence by failing to timely bring the CUTPA claim and a claim of tortious interference with business expectancies against the hospital. Pursuant to the applicable rule of practice (§ 13-4), the plaintiff disclosed an attorney, S, as an expert witness who would testify at trial. The plaintiff did not disclose S's opinions at that time. After the trial court extended the trial date and discovery deadlines several times, the defendant filed motions to preclude S from testifying at trial and for summary judgment. The defendant claimed that the plaintiff's expert witness disclosure was not in conformance with the requirements of Practice Book § 13-4 and that summary judgment was required because, in the absence of expert testimony, the plaintiff could not prevail on his legal malpractice claims. The court again continued the trial date and extended the plaintiff's deadline for the disclosure of expert witnesses. Two weeks after the court-ordered deadline for the disclosure of expert witnesses, the plaintiff again disclosed that S would be the expert he planned to call to testify at trial. The plaintiff disclosed that S would testify that the defendant had breached the standard of care he owed to the plaintiff in the prior action and that the breach caused the plaintiff to sustain damages. The defendant thereafter deposed S, who testified in his deposition, inter alia, that, although he had received sixteen boxes of materials from the defendant's representation of the plaintiff in the prior action, he was not authorized to read that material, he would not read it until he received authorization to do so and that the plaintiff's counsel had instructed him not to review the documents or spend much time preparing for the deposition. S further testified that the plaintiff's counsel had told him that he could opine as to the elements of legal malpractice in light of certain facts that S could assume the plaintiff hoped to prove at trial. S also testified that he had not read the fact finder's decision in the prior action or spoken to the expert witnesses who testified in that action. The defendant again filed motions to preclude S from testifying at trial as an expert witness and for summary judgment. The trial court granted both motions and rendered judgment for the defendant, concluding, inter alia, that the plaintiff's disclosure did not comply with the requirements of § 13-4 in that it failed to set forth an expert opinion concerning causation and damages as well as the factual bases for S's opinions. On the plaintiff's appeal to this court, *held*:

1. This court could not conclude that the trial court abused its discretion by precluding S from testifying at trial and determining that the sanction of preclusion was proportional to the plaintiff's noncompliance with the disclosure requirements of Practice Book § 13-4: the plaintiff failed to set forth any expert opinion as to the legal malpractice elements of causation and damages, he did not supplement his disclosure of S to add such opinions, he failed to provide the substance of the grounds for each of the disclosed opinions, and he abused the discovery process by engaging in gamesmanship that prevented S from learning the perti-

nent facts of the prior action, thereby thwarting the defendant's ability to ascertain what S likely would opine at trial; moreover, S admitted that he had done limited legal research and lacked knowledge about the prior action, and the affidavit he submitted in opposition to the defendant's summary judgment motion showed that S reviewed only limited and selective materials from the prior action and that his opinions were untethered to facts in the record, as he admitted that they were based on hypothetical facts and facts that he expected to be brought out at trial; furthermore, the court reasonably could have concluded that the plaintiff's noncompliance and discovery abuse could not be addressed by a less severe sanction or combination of sanctions, as the trial date had been continued eight times, the plaintiff had ample opportunity to disclose a prepared, informed expert or to ensure that S was apprised of the pertinent facts, and a less severe sanction or combination of sanctions would have the practical effect of rewarding the plaintiff's pattern of game-playing, as S did not review the file during the two months between the two days of his deposition and another continuance to allow him more time to review the file would require the defendant to conduct additional discovery.

2. The plaintiff could not prevail on his claim that the trial court improperly granted the defendant's motion for summary judgment; summary judgment was required because, in the absence of expert testimony, the plaintiff could not prevail on his legal malpractice claims, as he could not establish the applicable standard of care that the defendant owed to the plaintiff and whether the defendant breached that standard of care by not initiating CUTPA and tortious interference with business expectancies claims against the hospital in the prior action, and, thus, contrary to the plaintiff's contention, there was no genuine issue of material fact as to causation and damages.

Argued March 3—officially released August 9, 2022

*Procedural History*

Action to recover damages for the defendant's alleged legal malpractice, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Edward T. Krumeich II*, judge trial referee, granted the defendant's motions to preclude certain evidence and for summary judgment and rendered judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, with whom, on the brief, was *Anthony J. Beale*, for the appellant (plaintiff).

*Robert C. E. Laney*, with whom, on the brief, was *Ryan T. Daly*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. This appeal arises out of a legal malpractice action brought by the plaintiff, Charles D. Gianetti, against the defendant, Alan Neigher, an attorney who represented the plaintiff in a prior civil action (prior action) against Norwalk Hospital (hospital). The plaintiff appeals from the summary judgment rendered by the trial court in favor of the defendant. On appeal, the plaintiff claims that the court improperly granted the defendant's motion to preclude the testimony of the plaintiff's expert witness, Attorney Bruce H. Stanger, because (1) the sanction of precluding the testimony was not proportional to the plaintiff's noncompliance with the expert disclosure requirements set forth in Practice Book § 13-4,[1] which the plaintiff contends could have been adequately remedied by a less severe sanction, and (2) in so sanctioning the plaintiff, the court improperly determined that the expert's opinion was not supported by a sufficient factual basis.[2] The plaintiff additionally claims that the court improperly rendered summary judgment because (1) the court failed to consider the testimony of his expert witness, and (2) even if the court properly precluded the testimony of his expert witness, a genuine issue of material fact nonetheless existed as to the legal malpractice elements of causation and damages.[3] We affirm the judgment of the court.

The following facts and procedural history, both in the present legal malpractice action and arising out of the defendant's representation of the plaintiff in the prior action, are relevant to our resolution of this appeal. "The plaintiff [was] a physician who specialize[d] in the field of plastic and reconstructive surgery. In 1974, the plaintiff was granted provisional clinical privileges as a member of the . . . medical staff [of the hospital]. In 1976, the plaintiff was granted full clinical privileges as an assistant attending staff physician [for the hospital]. The plaintiff's privileges were renewed on an annual basis through 1983. . . .

"In 1983, the plaintiff applied for the renewal of privileges for 1984. On the basis of the recommendations of the hospital's department of surgery, section of plastic and reconstructive surgery and credentials committee, the medical staff of the hospital declined to renew the plaintiff's privileges for 1984. The hospital's board of trustees subsequently ratified the decision of the medical staff. . . .

"In response to the [hospital's decision not to renew his] privileges [for 1984], the plaintiff [initiated] the [prior] action against the hospital[4] in December, 1983 . . . ." (Footnote added; footnote omitted.) *Gianetti* v. *Norwalk Hospital*, 266 Conn. 544, 547–48, 833 A.2d 891 (2003). The defendant represented the plaintiff in the prior action. In his complaint, the plaintiff alleged

breach of contract and antitrust violations. See *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 52, 557 A.2d 1249 (1989). The matter thereafter was assigned to an attorney trial referee. See *Gianetti* v. *Norwalk Hospital*, supra, 266 Conn. 548.

On March 11, 1987; see *Gianetti* v. *Norwalk Hospital*, supra, 211 Conn. 52; "[the] attorney trial referee . . . concluded in [a] report that . . . the hospital, through its employees and agents, had breached [its] contract [with the plaintiff] by failing to follow the procedural requirements of its bylaws in declining to renew the plaintiff's privileges." *Gianetti* v. *Norwalk Hospital*, supra, 266 Conn. 548. On July 18, 1993, the trial court accepted the attorney trial referee's report; see *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 760, 43 A.3d 567 (2012); and "rendered [an interlocutory] judgment in favor of the plaintiff on [his breach of contract claim as to] the issue of liability."[5] (Internal quotation marks omitted.) Id.; see also *Gianetti* v. *Norwalk Hospital*, supra, 266 Conn. 549. The court subsequently conducted a hearing to determine the appropriate remedy and, on September 9, 1999, awarded the plaintiff nominal damages. See *Gianetti* v. *Norwalk Hospital*, supra, 304 Conn. 761.

The plaintiff appealed from the court's award of nominal damages and, after this court; see *Gianetti* v. *Norwalk Hospital*, 64 Conn. App. 218, 779 A.2d 847 (2001), rev'd in part, 266 Conn. 544, 833 A.2d 891 (2003); and our Supreme Court; see *Gianetti* v. *Norwalk Hospital*, supra, 266 Conn. 544; decided the appeal, the matter was remanded to the trial court. See *Gianetti* v. *Norwalk Hospital*, supra, 304 Conn. 763. On remand, the court held a hearing in damages and, in a memorandum of decision dated April 15, 2009, awarded the plaintiff $258,610 plus costs on the breach of contract count.[6] See id.

In August, 1996, during the pendency of the prior action and before the court had awarded him damages for the hospital's breach of contract, the plaintiff sought leave to amend his complaint to add an additional count asserting a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. See *Gianetti* v. *Norwalk Hospital*, Superior Court, judicial district of Fairfield, Docket No. CV-84-0214340-S (September 9, 1999), rev'd on other grounds, 64 Conn. App. 218, 779 A.2d 847 (2001), rev'd in part, 266 Conn. 544, 833 A.2d 891 (2003). The court, *Rush, J.*, denied the plaintiff's motion for leave to amend the complaint. See id. Subsequently, the defendant commenced, on the plaintiff's behalf, a separate action against the hospital, alleging a violation of CUTPA. On April 9, 2002, the court, *Sheedy, J.*, granted the hospital's motion for summary judgment as to the plaintiff's CUTPA claim; see *Gianetti* v. *Norwalk Hospital*, Superior Court, judicial district of Fairfield, Docket No. CV-98-0354312-S (April

9, 2002) (31 Conn. L. Rptr. 676, 678); and concluded that the claim was time barred by the applicable three year statute of limitations. See General Statutes § 42-110g (f).

On May 14, 2015, the plaintiff initiated the present legal malpractice action (present action) against the defendant in connection with the defendant's representation of the plaintiff in the prior action. In his revised, operative complaint, dated February 27, 2017, the plaintiff alleged two counts of legal malpractice,[7] one count of violating CUTPA, one count of breach of fiduciary duty, and one count of breach of contract. With respect to the legal malpractice counts, the plaintiff contended that, despite his having prevailed on the breach of contract count against the hospital in the prior action and having recovered $258,610 plus costs on that count; see *Gianetti* v. *Norwalk Hospital*, supra, 304 Conn. 763; the defendant nonetheless committed professional negligence by failing to timely bring against the hospital claims of violation of CUTPA and tortious interference with business expectancies in the prior action.

The court, *Heller, J.*, entered a scheduling order on October 15, 2015, which required the plaintiff to disclose any expert witnesses he anticipated calling to testify at trial by April 1, 2016, and scheduled the trial to commence on April 25, 2017. On July 12, 2016, the court granted the defendant's motion to amend the court's scheduling order and, accordingly, modified the plaintiff's deadline to disclose any expert witnesses he anticipated calling to testify at trial to August 8, 2016.

On November 1, 2016, the defendant filed a motion for nonsuit, arguing that the plaintiff had failed to respond sufficiently to interrogatories—including an interrogatory in which the defendant requested that the plaintiff identify the expert witnesses he anticipated calling to testify at trial—and requests for production that the defendant had served on the plaintiff on July 6, 2015. The court, *Jacobs, J.*, denied the defendant's motion without prejudice and ordered "[t]he plaintiff . . . to comply with [the defendant's] interrogatories . . . and requests [for] production . . . by" December 27, 2016. On January 25, 2017, the defendant moved for a continuance of the trial date, which the court, *Mintz, J.*, granted on February 1, 2017. The trial date was continued to November 28, 2017.

The plaintiff responded to the defendant's interrogatories on March 8, 2017. In his response, the plaintiff for the first time named Stanger as an expert witness he planned to call to testify at trial. The plaintiff, however, merely stated the following in his response: "I expect . . . Stanger . . . will testify as an expert witness at the trial in this matter"; the "[s]ubject matter [of Stanger's testimony] [would] be [the] defendant's [alleged] professional negligence and legal malpractice"; that "[s]uch facts and opinions [would] be supplemented as

required after review of [the plaintiff's] revised complaint and [after] discovery"; and "[s]uch grounds for each opinion [would] be supplemented as required after review of [the plaintiff's] revised complaint and [after] discovery." The plaintiff promised the defendant that he would supplement his response by disclosing Stanger's opinions at a later date. The plaintiff, however, did not supplement this response.

On April 10, 2017, the defendant moved to strike all counts of the plaintiff's complaint, including the legal malpractice counts. On October 23, 2017, the court, *Jacobs*, *J.*, granted the defendant's motion to strike the plaintiff's CUTPA, breach of fiduciary duty, and breach of contract counts but denied the defendant's motion as to the legal malpractice counts. On October 26, 2017, the defendant moved for a continuance of the trial date from November 28, 2017, to July 16, 2018. On October 31, 2017, the court granted the motion and extended the trial date to July 17, 2018.

On January 3, 2018, the defendant filed a motion for judgment as to the CUTPA, breach of fiduciary duty, and breach of contract counts, contending that the plaintiff had failed to file a new pleading within fifteen days of the court's decision granting the defendant's motion to strike those counts. See Practice Book § 10-44. The court granted the defendant's motion on January 22, 2018.

On July 2, 2018, the defendant filed a motion to preclude the plaintiff from introducing expert testimony at trial as to the remaining malpractice counts. The defendant contended that the plaintiff had failed to disclose the expert witnesses that he planned to call to testify at trial by August 8, 2016, as required by the amended scheduling order. The defendant further argued that, although the plaintiff had identified Stanger in his March 8, 2017 response to the defendant's interrogatories, the plaintiff nonetheless had failed to satisfy the requirements of Practice Book § 13-4.[8] On or about July 12, 2018, less than one week before trial was scheduled to begin, the plaintiff moved for a continuance of the trial date and filed a case flow request seeking the same. The court, *Genuario*, *J.*, granted the plaintiff's case flow request, stating that the new trial schedule would be determined soon thereafter at a status conference. Subsequently, the trial was continued to February 26, 2019, and, in a joint motion to modify the scheduling order, the parties requested that a new deadline of September 7, 2018, be imposed for the plaintiff to disclose any expert witnesses that he planned to call to testify at trial. The court, *Jacobs*, *J.*, granted the parties' motion on August 6, 2018, thereby setting a deadline of September 7, 2018, for the plaintiff to disclose expert witnesses. In a motion to modify the scheduling order dated December 7, 2018, the parties jointly requested that the trial be continued to June 4, 2019, and a new deadline

of January 25, 2019, be imposed for the plaintiff to disclose expert witnesses.[9] The court, *Genuario, J.*, granted the motion on January 7, 2019. On May 29, 2019, the plaintiff moved for a continuance of the trial date, and, on May 30, 2019, the court granted the plaintiff's motion and rescheduled the commencement of trial to August 21, 2019.

On August 8, 2019, the defendant filed a second motion to preclude the plaintiff from introducing expert testimony at trial. The defendant argued that the plaintiff had failed to disclose the expert witnesses he planned to call to testify at trial, despite his obligation to do so under the court's order. The defendant contended that the sanction of preclusion of expert testimony was proportional to the plaintiff's failure to file an expert witness disclosure, as required by Practice Book § 13-4, particularly in light of the facts that (1) the plaintiff had failed to file an expert witness disclosure by January 25, 2019, as mandated by the court, (2) the plaintiff had failed to supplement his interrogatory response and disclose Stanger's opinions and their factual bases, and (3) the trial was scheduled to commence in two weeks.

The defendant also filed a motion for summary judgment on August 8, 2019. In his motion and accompanying memorandum of law, the defendant argued that, because the plaintiff failed to timely file an expert witness disclosure, the plaintiff should not be permitted to present expert testimony at trial. The defendant specifically asserted that, in the absence of expert testimony, the plaintiff would be unable to meet his burden of proof with respect to the standard of care that the defendant owed to the plaintiff, causation, or damages, each of which the plaintiff was required to prove to prevail on his legal malpractice claims.

On August 12, 2019, the plaintiff moved for a continuance of the trial date "in order to finish discovery . . . and respond to" the defendant's August 8, 2019 motions. The court granted the plaintiff's motion and ordered that the trial be scheduled either in January or February, 2020. The trial date subsequently was scheduled for February 4, 2020. The court also extended the plaintiff's deadline to disclose expert witnesses to October 4, 2019.

On October 18, 2019—two weeks after the plaintiff's October 4, 2019 deadline to disclose expert witnesses—the plaintiff filed a disclosure of expert witnesses in which he disclosed Stanger as the expert witness he planned to call to testify at trial. The plaintiff summarily stated in the disclosure that he expected Stanger to opine "as to the [standard] of care" that the defendant owed to the plaintiff and that the defendant "failed to meet the applicable standard of care" he owed to the plaintiff when he represented the plaintiff in the prior action. The plaintiff also stated therein that he expected Stanger to testify about "Connecticut law applicable

to the [prior action]," including CUTPA. Finally, the plaintiff stated that Stanger would testify that the defendant breached the standard of care he owed to the plaintiff by failing to timely bring a CUTPA claim against the hospital, which "caused damages to the plaintiff." The plaintiff provided in the disclosure that Stanger's opinions would "be based [on] his knowledge of the case from review of the [prior action] and his experience as an attorney admitted in Connecticut." On the same day that the plaintiff filed the expert disclosure, the defendant provided notice to the plaintiff that the defendant would depose Stanger on November 6, 2019. The deposition, however, did not take place on that day.

On November 25, 2019, the plaintiff filed a motion for a protective order in which he claimed that the defendant had withheld certain documents from him and requested that the deposition be postponed until after the defendant had produced the documents and Stanger had an opportunity to review them. The court, *Hon. Edward T. Krumeich II*, judge trial referee, later determined in its memorandum of decision that the defendant *had in fact* produced electronically the documents at issue long before the plaintiff filed the expert disclosure. Additionally, Stanger testified during his deposition that he had received the documents prior to the first day of the deposition, but counsel for the plaintiff had instructed him not to review the documents. In an order dated December 2, 2019, the court ordered in relevant part: "By no later than [December 6, 2019], counsel shall select a mutually agreeable date and time between [December 6 and 31, 2019] to schedule and conduct [Stanger's] deposition. If [Stanger] fails to appear for [the] deposition on the date selected, the defendant may move for the entry of sanctions, including a judgment of nonsuit, by filing a motion that references this order and the plaintiff's failure to comply."

The defendant conducted the first day of the deposition of Stanger on December 20, 2019. Stanger testified at the deposition that he had spent "many, many hours" preparing to testify. He specifically stated that, to prepare to testify at the deposition, he had reviewed some of the decisions of our Supreme Court, this court,[10] and the Superior Court in the prior action, certain demand letters in the prior action, and the complaint in the present action. Stanger, however, admitted that he had not reviewed the transcripts of the depositions taken during the pendency of the prior action, the trial transcripts from the prior action—apart from "[seeing] one page" from a deposition transcript, the date and the content of which he could not identify—or the deposition exhibits, trial exhibits, discovery materials, and expert reports from the prior action. Stanger testified that, apart from counsel for the plaintiff, he did not speak to any individuals about the prior action, including the expert witnesses called to testify at trial in that

action. Stanger further testified that he did not review the hospital bylaws or the minutes of the hospital meetings during which the medical staff decided not to renew the plaintiff's hospital privileges. Stanger also stated that he had not read the fact finder's decision in the prior action, but that he "long[ed] to see" it.

Stanger additionally testified that, a few weeks before the first day of the deposition, he had received a file that consisted of "sixteen boxes" of materials from the defendant's representation of the plaintiff in the prior action (file), which included, inter alia, deposition and trial transcripts from the prior action. When Stanger was asked whether he "only looked at what [counsel for the plaintiff] asked [him] to look at," Stanger replied, "[n]o. . . . [Counsel for the plaintiff] didn't direct me to [look at] very much. Whatever I looked at was probably, as I recall it, things that I already had in my [personal] file." Additionally, the following colloquy occurred:

"[Stanger]: . . . I look forward to hearing the evidence or reading the evidence after . . . *I'm told to read the . . .* [*file*].

"[The Defendant's Counsel]: Have you been limited in any way in the work that you've done so far?

"[Stanger]: Yes.

"[The Defendant's Counsel]: How so?

"[Stanger]: When [counsel for the plaintiff and I] saw the scope of those [sixteen] boxes . . . we realized that it was going to take a lot of time to review [the materials therein]. . . . *So, I have not been authorized.* I said to [counsel for the plaintiff], one of us has got to look at this, either your office or me or mine, or a third party, or somebody in order to understand this better as you go forward with the depositions, and I look forward to us dividing up that work.

"[The Defendant's Counsel]: So, let me see if I understand that. *You have not been authorized to look through the sixteen boxes of . . .* [*materials from the defendant's representation of the plaintiff in the prior action*], correct?

"[Stanger]: *I have not been authorized to read them. I can flip through them*, as I did a couple of times, just to see how they work . . . .

"[The Defendant's Counsel]: Okay. Has there been any resolution to the issue of who is going to review these sixteen boxes of [materials]?

"[Stanger]: *All I can say is, I have not been authorized to review one or all.* . . .

"[The Defendant's Counsel]: [Counsel for the plaintiff] hasn't directed you to [specific items] in [the file] as to where to look?

"[Stanger]: Right." (Emphasis added.)

Stanger iterated multiple times during the first day of the deposition that he had not reviewed any of the materials within the file, neither before the plaintiff had filed the expert disclosure nor before the first day of the deposition. Stanger additionally reiterated that he would review materials in the file only once he was "authorized to" do so.

Stanger further testified that counsel for the plaintiff had instructed him that he could "assume" certain facts that the plaintiff hoped to prove at trial and, in light of those facts, opine as to the elements of legal malpractice. For example, when counsel for the defendant asked Stanger "[h]ow heinous" the hospital's conduct was in the prior action, Stanger replied, "[t]hat's something that I look forward to understanding better. I've been told to assume that it was heinous." Stanger also testified that counsel for the plaintiff had informed him that, for the purposes of identifying the immoral, unethical, oppressive, or unscrupulous conduct that the hospital had committed in contravention of CUTPA; see *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 484, 871 A.2d 981 (2005); he could "assume" that the hospital had decided not to renew the plaintiff's privileges due to demands from other doctors who were "interested in eliminating [the plaintiff from the hospital staff] for inappropriate reasons." Stanger, however, could not identify with certainty the names of the other doctors[11] or the "inappropriate reasons" for their wanting the plaintiff's privileges not to be renewed. Instead, Stanger stated: "I just was told that there [were] inappropriate reasons . . . ." When counsel for the defendant asked Stanger to identify evidence of this allegedly unlawful conduct, the following colloquy occurred:

"[The Defendant's Counsel]: What evidence is there that [this allegedly immoral, unethical, oppressive, or unscrupulous conduct occurred]?

"[Stanger]: I'm sure it's in those sixteen boxes . . . .

"[The Defendant's Counsel]: It's in those sixteen boxes that you've never looked at?

"[Stanger]: Correct."

Stanger explained that, in his view, he need not "have personal knowledge" of the facts pertinent to the prior action; he simply needed to know of the facts that "[would] be proven at trial," and he either had been told by counsel for the plaintiff the pertinent facts he should "assume" or had learned the pertinent facts by reviewing the plaintiff's allegations in the complaint filed in the present action. When counsel for the defendant asked Stanger whether, as an expert witness, he believed it would be permissible to base his opinions at trial solely on the facts represented to be true by counsel for the plaintiff, Stanger replied, "[n]o. But the

good news is . . . by the time we get to the trial, then . . . evidence [will have] come in . . . ."

With respect to whether the plaintiff would have prevailed had he brought a tortious interference with business expectancies claim against the hospital in the prior action, counsel for the defendant asked Stanger, "you don't have any way to divine for us how a tortious interference claim would have turned out [in the prior action] because you don't know the [pertinent] facts [to the prior action], correct?" Stanger replied, "[c]orrect." With respect to whether the plaintiff would have prevailed had he brought a CUTPA claim against the hospital in the prior action, counsel for the defendant asked Stanger, "with respect to an unadvanced CUTPA claim, you don't have any opinions at this moment that such a claim would have been successful?" Stanger replied, "I'm waiting to see other evidence." Stanger later agreed when asked if he believed that "the evidence [would] establish that it was more likely than not that" the defendant could have brought successfully a CUTPA claim in the prior action because the defendant eventually commenced on the plaintiff's behalf a separate action, alleging a violation of CUTPA, against the hospital. With respect to the basis of Stanger's opinion that the plaintiff likely would have prevailed had he brought a CUTPA claim against the hospital in the prior action, the following colloquy occurred:

"[The Defendant's Counsel]: What unlawful acts did [the hospital] commit vis-à-vis [the plaintiff]?

"[Stanger]: I can't enumerate them. I haven't looked at all the evidence.

"[The Defendant's Counsel]: Give me one. I'm not asking you to enumerate them. Give me one unlawful act on the part of [the hospital].

"[Stanger]: I'm—I've been told that there are rules to be followed with regard—state of Connecticut laws that are required to be followed with regard to a doctor being dismissed or being treated as . . . the facts will show [the plaintiff] was treat[ed] . . . .

"[The Defendant's Counsel]: What Connecticut laws?

"[Stanger]: *I wasn't told them. I was told that I can assume them.*

"[The Defendant's Counsel]: You can assume that they exist? Or assume—

"[Stanger]: That the facts will—I don't know which particular law it was. . . . I can't help you. . . .

"[The Defendant's Counsel]: You don't know?

"[Stanger]: —I'm sure [you'll find out], when [you complete] your depositions." (Emphasis added.)

Stanger additionally stated that he was "told by [counsel for the plaintiff] that there are certain specific regula-

tions regarding doctors that the state of Connecticut has in terms of [employment] dismissal or negative action. I don't know the details. But [counsel for the plaintiff] said they would be . . . relevant to a CUTPA claim . . . [a]nd [counsel for the plaintiff] said he would get me that information." When counsel for the defendant asked Stanger, "as you sit here today, you don't know what those regulations are or what they say," Stanger once again replied, "[c]orrect." Finally, with respect to Stanger's opinions concerning damages, the following colloquy took place:

"[The Defendant's Counsel]: Do you intend to give an opinion on damages at the trial of this case . . . [o]r is your engagement [as an expert witness limited to] proving a deviation from the standard of care?

"[Stanger]: I understand [that the] scope [of my engagement as an expert witness] would include [opining as to] the damages, and *it would be subject to my hearing from other* [*expert witnesses*] *who I may rely upon.*

"[The Defendant's Counsel]: What other [expert witnesses]?

"[Stanger]: That's for . . . counsel [for the plaintiff] to decide and to present to me. . . .

"[The Defendant's Counsel]: Have you advised [counsel for the plaintiff] that it would be helpful to engage [any other expert witnesses]?

"[Stanger]: I've said to him that *we may need somebody on damages.* That *I need to understand the damages better* . . . .

"[The Defendant's Counsel]: As you sit here today, do you still believe . . . that [counsel for the plaintiff] and [the plaintiff] may need [another expert witness to provide an opinion as to] damages and that you need to understand the damage analysis better in this case?

"[Stanger]: It's a—there's a may in that. There's not a will. I think it's possible, depending upon . . . the evidence . . . . And when I have a chance to review all or some of [the file], depending upon what I'm authorized to do, before that decision can be made. . . . [T]here's multiple ways that that can go depending upon what's in those boxes and what the testimony is of the two parties. *I believe there's damage here. The amount of the damage is the thing that's uncertain to me.*" (Emphasis added.)

Stanger also testified that he believed it was "likely that . . . additional damages" would be available to the plaintiff, aside from the damages the plaintiff had obtained as a result of his successful breach of contract claim against the hospital, but that he "would have to [review] each of the decisions [in the prior action]" to be sure. When counsel for the defendant asked Stanger if a "fair synopsis" of his deposition testimony related

to damages was that Stanger "believe[d] that" damages would have been available to the plaintiff, "but [he] [could not] quantify them," Stanger answered affirmatively.

On January 8, 2020, following the first day of Stanger's deposition, the defendant filed a supplemental memorandum of law in support of his motion for summary judgment and motion to preclude Stanger's expert testimony. The defendant argued in his supplemental memorandum of law that, because Stanger had not reviewed the file, he lacked sufficient knowledge concerning the defendant's representation of the plaintiff in the prior action such that he could not opine as to whether the defendant had committed legal malpractice in the prior action. The defendant additionally argued that Stanger had no independent opinion as to damages. The defendant asserted that, because the plaintiff had disclosed Stanger as an expert before Stanger had formed any meaningful, relevant opinions about the defendant's representation of the plaintiff in the prior action, the plaintiff had made the disclosure in bad faith.

On January 13, 2020, the defendant filed a supplemental motion to preclude the plaintiff from introducing expert testimony at trial and a supplemental motion for summary judgment. The defendant argued in his supplemental motions that, because Stanger had testified during his deposition that he could not opine as to whether the plaintiff would have prevailed had he pursued a CUTPA claim or a tortious interference with business expectancies claim against the hospital in the prior action, the plaintiff could not meet his burden of proof as to his claims of legal malpractice in the present action. The plaintiff filed objections to the defendant's supplemental motions, as well as an affidavit from Stanger dated January 20, 2020.

In his affidavit, Stanger stated that, in his opinion, the defendant was required to comply with an applicable standard of care in his representation of the plaintiff in the prior action. He opined that, by failing to raise a CUTPA or tortious interference with business expectancies claim on behalf of the plaintiff in the prior action, the defendant had failed to comply with that standard of care. Stanger stated in his affidavit that the plaintiff had "suffered [financial] injury, loss and damage, for which [the defendant] is liable," arising out of the defendant's failure to raise a CUTPA or tortious interference with business expectancies claim. Stanger averred several times in his affidavit that he based his opinions on "[t]he facts [he] expected [would] be asserted at trial . . . ." He also averred that he had reviewed "the appellate decisions," "the complaints," and "portions of the present proceedings." In his affidavit, however, Stanger did not opine that the plaintiff would have prevailed had he brought a CUTPA or tortious interference with business expectancies claim

against the hospital in the prior action. Likewise, Stanger did not to any reasonable degree of specificity aver to an amount of damages that the plaintiff would have recovered above and beyond the $258,610 plus costs he recovered on the breach of contract count; see *Ulbrich* v. *Groth*, 310 Conn. 375, 411, 78 A.3d 76 (2013) ("CUTPA was intended to provide a remedy that is *separate and distinct* from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances" (emphasis added)); had he prevailed against the hospital on a claim of CUTPA violations or tortious interference with business expectancies.

On January 21, 2020, two weeks before the trial was scheduled to begin on February 4, 2020, the court heard argument on the defendant's motion to preclude expert testimony and motion for summary judgment.[12] Counsel for the plaintiff contended that, because Stanger's deposition was incomplete at that time, the court could not consider Stanger's testimony in considering the defendant's motions. The court subsequently ordered that Stanger's deposition be completed on Wednesday, January 29, 2020, after confirming that counsel for both parties were available on that date. The court continued argument on the defendant's motions to Friday, January 31, 2020, four days before trial was scheduled to commence.

On Tuesday, January 28, 2020—the day before the scheduled second day of Stanger's deposition and three days before trial was scheduled to commence—counsel for the plaintiff notified counsel for the defendant that Stanger was unavailable to be deposed the following day. The plaintiff also filed a motion for relief, in which he requested that the court allow Stanger's deposition to take place at a later date because Stanger was on vacation. The defendant subsequently filed an objection to the plaintiff's motion. The plaintiff additionally moved for a continuance of the trial date. On January 30, 2020, the defendant filed a supplemental memorandum of law in support of his motion to preclude expert testimony and motion for summary judgment, in which he argued that the plaintiff had violated the court's January 21, 2020 order requiring Stanger to appear for the continued deposition on January 29, 2020, and that preclusion of Stanger's testimony was a proportional sanction in accordance with Practice Book § 13-4.

On Friday, January 31, 2020, on which date argument on the defendant's motion to preclude expert testimony and motion for summary judgment was continued, counsel for the plaintiff once again argued that the court could not consider the incomplete deposition testimony of Stanger. The court, *Genuario, J.*, granted the plaintiff's motion for a continuance and continued the trial date to October 6, 2020.

The second day of Stanger's deposition eventually

took place on February 12, 2020. Counsel for the plaintiff asked Stanger whether his opinions were based on "reasonable legal probabilities" that he had deduced from his experience as an attorney, and Stanger answered affirmatively. Stanger, however, also testified that, although two months had passed between the first and second days of his deposition, he still had not read the file, aside from "skim[ming] a few" items and "review[ing] pieces" of select materials. He additionally testified that he had not reviewed the communications between the parties, read the hospital bylaws—aside from the portions of the bylaws that either the plaintiff had included in the complaint in the prior action and were included in the decisions from that action that he had reviewed—or reviewed any of the defendant's bills from the defendant's representation of the plaintiff in that action.

Stanger explained that counsel for the plaintiff had sent him a letter several weeks prior to the second day of his deposition listing certain materials within the file that Stanger should review before the second day of his deposition and the start of trial. Stanger, however, explained that he had not reviewed these materials, or others in his possession, because counsel for the plaintiff had not authorized him to do so. Specifically, Stanger testified:

"[Stanger]: . . . I have got all these piles of paper . . . of the various parts of the file . . . . I just flipped through them to see what's there.

"[The Defendant's Counsel]: Did you read them?

"[Stanger]: I did not. I just breezed through them. I skimmed a few. . . .

"[The Defendant's Counsel]: Have you reviewed [the] boxes and boxes of [materials from the file]?

"[Stanger]: I have reviewed pieces of [them] . . . .

"[The Defendant's Counsel]: . . . [A]m I to understand that [the] letter [from counsel for the plaintiff] [was] your authorization to look at . . . specific boxes and . . . specific items in those boxes?

"[Stanger]: That's not how I understood it.

"[The Defendant's Counsel]: Okay, then how did you understand it?

"[Stanger]: I understood it as, this is a foreshadow of what is to come, and that *I will be told when I am authorized to dig in deeply.*

"[The Defendant's Counsel]: So, as we sit here today, *you still have not been authorized to dig in deeply, correct*?

"[Stanger]: *Correct.* . . .

"[The Defendant's Counsel]: . . . [W]hen you got this list [in the letter] from [counsel for the plaintiff] a

couple [of] weeks ago . . . [d]id you look at all of these things on this list?

"[Stanger]: Well, I certainly looked at the list and I clicked through the different folders [in the electronic version of the file] . . . . [J]ust glancing at it, I thought what I was facing . . . was a couple thousand pages . . . . [With respect to any of the electronic folders within the file] that had subfolders . . . I . . . shut down the printing [of those materials].

"[The Defendant's Counsel]: Why?

"[Stanger]: *Because I was told not to spend a lot of time on this.*

"[The Defendant's Counsel]: *Who told you that?*

"[Stanger]: [*Counsel for the plaintiff's*] *office.*

"[The Defendant's Counsel]: What kind of limitation did [counsel for the plaintiff] give you?

"[Stanger]: The limitation that I understood that I was under was [that] the opinion that [I have been] giving [was] sufficient for the purposes of the deposition. That [counsel for the plaintiff] will be able to present the evidence at the time that it's needed that provides the factual basis for the claims made in the complaint. And just like any expert, I am to rely upon the actual facts that are proven in court. . . .

"[The Defendant's Counsel]: . . . [D]id you review most of [the items delineated in the letter from counsel for the plaintiff]?

"[Stanger]: . . . It depends on how you're defining review. Did I take a look at the size of the paper and think about whether I am going to read these thoroughly—yes. Did I skim through looking at a page here and there and looking at different things—yes. Did I keep records of that—no.

"[The Defendant's Counsel]: Okay, but in your skimming through, I mean, you said to me that you were told not to spend a lot of time on this, right?

"[Stanger]: Right.

"[The Defendant's Counsel]: And [counsel for the plaintiff] told you that?

"[Stanger]: Correct.

"[The Defendant's Counsel]: Did [counsel for the plaintiff] tell you that before or after he sent you [the] letter . . . ?

"[Stanger]: After." (Emphasis added.)

When counsel for the defendant asked Stanger whether, at any point, Stanger substantively had reviewed the items listed in the letter, Stanger answered, "[i]f by substantive review, you mean looking through [the items] in a thorough way, taking notes,

considering how I [would] use them in opinions so that I could recite . . . [the] page and chapter and whatever," then he had not substantively reviewed the items, but that he "did spend some time on a couple of areas . . . ." Stanger also testified that counsel for the plaintiff never gave him the "green light" to conduct more than a cursory review of the files listed in the letter.

Nonetheless, Stanger opined that the hospital had violated CUTPA by failing to provide the plaintiff with a hearing before declining to renew his hospital privileges because, according to Stanger, "the law generally provides for that kind of hearing if a doctor is being found to have lost [his] privileges," and, thus, the defendant should have asserted on behalf of the plaintiff a CUTPA claim against the hospital in the complaint in the prior action. Stanger then stated that a statute required that a hearing be held before the Department of Public Health before a hospital decided to decline to renew a doctor's privileges. When counsel for the defendant asked Stanger to identify the statute, Stanger stated that he had "looked it up . . . in the [previous] week" but that he did not have a copy of it in his personal file. Ultimately, he could not identify the statute, outside of stating, "I think 20D and E comes to mind, but that's not the title. . . . [S]omething dash 20D and E," until counsel for the plaintiff "refresh[ed] [Stanger's] recollection" by providing him the statutory sections.[13] Nonetheless, Stanger could not articulate how, by statute, the hearing must be conducted. Stanger also testified that he was unaware of any decisions of our Supreme Court, this court, or the Superior Court in which a hospital's failure to provide a hearing to a doctor before his privileges were not renewed was determined to be a violation of CUTPA.

Stanger further opined that the plaintiff likely would have prevailed had he brought a CUTPA claim against the hospital in the prior action, and, in connection with his opinion, Stanger theorized that "unfair motives" underpinned the hospital's decision not to renew the plaintiff's privileges and that the hospital had acted in bad faith in deciding not to renew the plaintiff's privileges. When, however, counsel for the defendant asked Stanger to explain "everything [he knew] about [the hospital's] unfair motives and [to identify] the evidence in [his personal] file of those motives," Stanger stated that he did not "believe [it was his] responsibility to do" so and that he believed that, at trial, counsel for the plaintiff would present evidence of the hospital's improper motives. Additionally, when counsel for the defendant asked Stanger whether he had "any evidence . . . that show[ed] bad faith conduct [committed by the hospital] vis-à-vis [the plaintiff], other than the fact that [the hospital] did not hold a hearing," Stanger replied, "I believe that I probably do have that evidence in the . . . boxes [of materials] . . . that the [p]laintiff will make part of his case [at trial] . . . . It was repre-

sented to me that . . . [the plaintiff would] present . . . this evidence, and I was asked to assume that fact." Stanger then stated that he "[did not] recall having been shown" any actual evidence. Stanger additionally testified that, if the plaintiff had prevailed on a CUTPA claim, he likely would have recovered $258,000 trebled—approximately three times the amount he had recovered in the prior action. In support of this opinion, Stanger testified that he estimated that the total amount would be trebled because the total trebled amount "seemed like a reasonable number for a judge to do in this case." He further opined that the plaintiff additionally would have recovered attorney's fees, which he estimated totaled $800,000—despite not reviewing the defendant's bills for his representation of the plaintiff in the prior action.[14] Ultimately, Stanger testified that he had based his opinions on his review of the decisions of our Supreme Court, this court, and the Superior Court in the prior action and the allegations made in the plaintiff's complaint in the prior action, which Stanger "accept[ed] . . . as . . . true . . . ."

On February 25, 2020, after the conclusion of Stanger's deposition, the defendant filed an additional memorandum of law in support of his motion to preclude expert testimony and motion for summary judgment in which he argued that, despite Stanger's having had two additional months to prepare for the second day of the deposition, Stanger remained ignorant as to the facts of the prior action. On August 25, 2020, the court, *Hon. Edward T. Krumeich II*, judge trial referee, held a remote hearing on the defendant's motion to preclude expert testimony and motion for summary judgment.

In a memorandum of decision dated September 1, 2020, the court granted the defendant's motion to preclude Stanger's testimony and motion for summary judgment. The court first determined that Stanger lacked the requisite factual predicate to opine as to the legal malpractice element of causation—specifically, that the plaintiff likely would have prevailed on CUTPA and tortious interference with business expectancies claims had he brought them against the hospital in the prior action. The court also determined that Stanger lacked the factual predicate to opine as to the legal malpractice element of damages and to estimate the damages that the plaintiff would have been able to recover, above and beyond the $258,610 plus costs he recovered on the breach of contract count, had he brought and prevailed on CUTPA and tortious interference with business expectancies claims in the prior action.[15] The court then concluded that preclusion of expert testimony was a proper and proportional sanction to impose on the plaintiff. Because the plaintiff was unable to meet his burden of presenting expert testimony as to the elements of legal malpractice in light of the court's sanction precluding the plaintiff from presenting expert testimony; see, e.g., *Grimm* v. *Fox,*

303 Conn. 322, 329, 33 A.3d 205 (2012) ("[a]s a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care [an attorney must exercise]" (internal quotation marks omitted)); see also *Bozelko* v. *Papastavros*, 323 Conn. 275, 285, 147 A.3d 1023 (2016) ("expert testimony also is a general requirement for establishing the element of causation in legal malpractice cases"); the court concluded that summary judgment was proper.

In determining that Stanger lacked the factual predicate to provide an expert opinion as to causation and damages, the court reviewed the expert disclosure dated October 18, 2019, Stanger's affidavit, and the transcripts from each day of Stanger's deposition. Looking first at the expert disclosure, the court noted that the plaintiff set forth therein Stanger's opinion that, by failing to bring the CUTPA and tortious interference with business expectancies claims against the hospital on behalf of the plaintiff in the prior action, the defendant had violated the applicable standard of care; the plaintiff, however, failed to set forth therein any expert opinion concerning the legal malpractice elements of causation and damages. The court noted that the plaintiff did not supplement his expert disclosure to add any such opinions. The court also concluded that the plaintiff had failed to provide in the expert disclosure the factual bases for Stanger's opinions—"if any"—concerning liability, causation, and damages.

The court similarly determined that Stanger's affidavit failed to set forth an expert opinion as to causation and damages. The court stated, "[t]here is no opinion [set forth in Stanger's affidavit] . . . as to the basis for and viability of . . . [a] CUTPA claim and [a tortious] interference [of business expectancies] claim," had they been brought in the prior action. As to damages, the court continued, Stanger merely had provided a conclusory statement that the plaintiff had suffered financial harm and damage. Regarding the factual basis for Stanger's opinions, the court noted that Stanger had averred that he had based his opinions on "some of the facts [he] expected [would] be brought out at trial," as opposed to facts that he himself had gleaned from the record. (Internal quotation marks omitted.) Further, the court noted that Stanger had reviewed only "limited and selective" materials—"the appellate decisions, the complaints and portions of the present proceedings"— before providing his opinions. (Internal quotation marks omitted.)

Turning to the first day of Stanger's deposition, the court noted that Stanger had admitted that he lacked knowledge about the prior action and had relied on the representations of counsel for the plaintiff as to what the plaintiff "hoped to prove at trial" instead of reviewing the record. The court highlighted Stanger's

testimony that counsel for the plaintiff did not authorize Stanger to review the file and, consequently, Stanger had not done so. Finally, the court concluded that Stanger had provided no opinion as to whether the plaintiff would have prevailed had he brought a CUTPA or tortious interference with business expectancies claim against the hospital in the prior action, or as to damages. By contrast, Stanger had testified that he would have to rely on the opinion of another expert to provide an opinion as to damages.

With respect to the second day of Stanger's deposition, the court noted that counsel for the plaintiff once again had failed to authorize Stanger to review the file and, instead, had "caution[ed] [Stanger] not to spend . . . too much time reviewing the [file] to prepare for the deposition . . . ." Consequently, the court explained, "Stanger curtailed his review and remained largely ignorant of" the facts pertinent to the prior action and instead based his opinions "on hypothetical facts that [the] plaintiff [purportedly] hoped to [prove] at trial." As the court noted, "Stanger testified that his opinions [were] based on his belief [that] the facts alleged in the [plaintiff's] complaint in the [prior action] would have supported" a CUTPA claim and that the claim would have been successful so long as "there was evidence to support" it. Likewise, the court noted, Stanger admitted that he had completed "limited research" with respect to the applicable law. The court thus concluded that, to the extent Stanger had opined as to the essential elements of a legal malpractice claim, Stanger lacked the necessary factual basis to provide expert testimony and his opinions were "untethered to facts" in the record.

The court next noted that it was "mindful" that the decision to preclude the plaintiff from presenting expert testimony pursuant to Practice Book § 13-4 would be a "severe sanction that [would] doom [the] plaintiff's case . . . ." The court, however, explained that, pursuant to § 13-4 (h), the sanction of preclusion, "including any consequence thereof on the [plaintiff's] ability to prosecute . . . [his] case, [was] proportional to [the plaintiff's] noncompliance" with the disclosure requirements of § 13-4, and the plaintiff's noncompliance could not "adequately be addressed by a less severe sanction or combination of sanctions." Practice Book § 13-4 (h).

With respect to proportionality, the court concluded that the sanction of preclusion was proportional to the plaintiff's noncompliance with the disclosure requirements set forth in Practice Book § 13-4. In so concluding, the court noted that the plaintiff's disclosure had failed to set forth any expert opinion as to the legal malpractice elements of causation and damages, and the plaintiff did not at any point supplement the disclosure to add such opinions. See Practice Book § 13-4 (b) (requiring a party to "disclos[e] . . . [the] expert wit-

nesses . . . [whom the party] may . . . [call] . . . to testify . . . at trial" and requiring disclosure to include "the expert opinions to which the witness is expected to testify"). The court determined that the plaintiff had "ample opportunity" throughout the duration of the pending action to "disclose an expert [witness who was] prepared to" provide an informed expert opinion as to "the central issues" of the case, including causation and damages, based on his independent review of the record of the prior action. Instead, and before Stanger had received the file from the prior action, the plaintiff disclosed Stanger as the sole expert witness he planned to call to testify at trial. After he filed the disclosure and provided Stanger the file in November, 2019, the plaintiff then "delay[ed] and limit[ed] . . . Stanger's review of the [file]" through both days of Stanger's deposition. As a result, throughout the pendency of the action, Stanger possessed only a cursory understanding of the facts of the prior action and based his opinions on his assumptions and the allegations that counsel for the plaintiff assured him would be proven at trial. The court thus determined that the plaintiff had failed to disclose to the defendant the factual substance on which Stanger based his opinions, in contravention of the disclosure requirements set forth in § 13-4. See Practice Book § 13-4 (b) (requiring a party to "disclos[e] . . . [the] expert witnesses . . . [whom the party] may . . . [call] . . . to testify . . . at trial" and requiring disclosure to include "the substance of the grounds for each expert opinion").

The court determined that Stanger's lack of preparation, and the plaintiff's contributions thereto, prevented the defendant from ascertaining what Stanger likely would opine at trial. The court noted that "[the] plaintiff's plan appeared to be to delay educating [Stanger] until trial and to delay [Stanger from] review[ing] and analy[zing] [the] material evidence until trial . . . ." The court emphasized that such a strategy could have resulted in further delay of the trial date or caused the defendant to be ambushed by a "newly informed expert" witness at trial. The court recognized that, between May 14, 2015, the date on which the present action was commenced, and September 1, 2020, the date of the court's memorandum of decision on the defendant's motions, the trial date was scheduled and rescheduled eight separate times.[16] The court thus concluded that continuing the trial date "for the ninth time" to allow Stanger more time to review the file would "not [be] an adequate sanction,"[17] as such a continuance would require that the defendant conduct additional discovery in light of any additional expert opinions or analysis and would be akin to "[r]ewarding [the plaintiff's] strategy of unduly limiting expert preparation" and encouraging an expert witness to "parrot the pleadings without independent[ly] review[ing] and anal[yz-ing] . . . the . . . [pertinent] evidence" from the

underlying action. For the same reasons, the court also noted that it was "far too late" for the plaintiff to disclose another expert. The court, thus, determined that the plaintiff's noncompliance could not adequately be addressed by a less severe sanction or combination of sanctions. See Practice Book § 13-4 (h) (2).

Consequently, the court granted the defendant's motion to preclude the plaintiff from presenting expert testimony at trial. Because the plaintiff would be unable to prove his legal malpractice claims "[w]ithout [the] admissible testimony [of] a competent expert" witness as to the elements of legal malpractice, the court granted the defendant's motion for summary judgment as to the plaintiff's claims. Following the court's decision, the plaintiff filed a motion to reargue the motion to preclude expert testimony and motion for summary judgment, which the court denied on September 22, 2020. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the court improperly granted the defendant's motion to preclude Stanger's testimony at trial. In connection with this claim, the plaintiff argues that the sanction of preclusion was not proportional to the plaintiff's alleged noncompliance with the disclosure requirements set forth in Practice Book § 13-4 and that the noncompliance adequately could have been addressed by a less severe sanction. The plaintiff additionally contends that, in imposing a sanction for failing to comply with the disclosure requirements, the court improperly concluded that Stanger's opinions were not based on sufficient facts.

Before we address the merits of the plaintiff's claim, we first set forth the appropriate standard of appellate review, an issue about which the parties disagree. The plaintiff argues that, in accordance with this court's decision in *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 59 A.3d 247, cert. granted, 308 Conn. 905, 61 A.3d 1098 (2013) (appeal withdrawn November 26, 2014), we should exercise plenary review over the trial court's decision to preclude Stanger's testimony because the court considered the defendant's motion to preclude Stanger's testimony in the same proceeding in which it considered the defendant's motion for summary judgment. The defendant contends that *Fortin* is distinguishable from the present case and that we should review the court's decision granting the defendant's motion to preclude Stanger's testimony for an abuse of discretion because, generally speaking, "[w]e afford our trial courts wide discretion in determining whether to admit expert testimony . . . ." *Weaver* v. *McKnight*, 313 Conn. 393, 405, 97 A.3d 920 (2014).

In resolving this dispute, we first look to this court's decisions in *DiPietro* v. *Farmington Sports Arena*,

*LLC*, 123 Conn. App. 583, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012), and *Fortin* v. *Hartford Underwriters Ins. Co.*, supra, 139 Conn. App. 826. In *DiPietro*, the plaintiff's minor daughter injured her ankle while playing soccer at an indoor soccer facility operated by the defendants. *DiPietro* v. *Farmington Sports Arena*, supra, 585–86. The plaintiff initiated separate actions against the defendants, alleging that the defendants negligently had installed and maintained the carpet that covered the facility's floor, creating an unreasonably dangerous surface on which to play soccer. Id., 586–87. The defendants filed motions for summary judgment as to the plaintiff's actions, claiming that there was no genuine issue of material fact as to, inter alia, the applicable duty that the defendants owed—which this court clarified on appeal was "the duty to provide and to maintain [their] premises in a reasonably safe condition"; id., 619; and whether the defendants had breached that duty. Id., 587, 619. In opposition, the plaintiff submitted the deposition testimony and affidavit of an expert witness, who opined that the carpeted surface was unreasonably dangerous. Id., 605–606.

In its consideration of the defendants' motions for summary judgment, the trial court determined that the expert witness' testimony was inadmissible because the expert lacked the requisite personal knowledge about the case to render an expert opinion of substantial value. See id., 609. Having determined that the testimony of the expert witness was inadmissible, the court granted the defendants' motions for summary judgment because, among other reasons, "expert testimony was required to establish the . . . applicable . . . [duty of the defendants as it pertained to the safety of the] indoor soccer facility and the breach thereof . . . ." Id., 609–10.

On appeal, this court "consider[ed] [its] scope of review of the question of the admissibility of [the expert witness'] testimony in [the] summary judgment proceeding . . . ." Id., 610. This court stated, "[o]rdinarily, a trial court's ruling on the admissibility of an expert's testimony at trial is subject to the deferential scope of review of abuse of discretion. . . . *That scope of review does not apply*, however, [*if*] *the trial court has excluded such testimony in connection with a summary judgment proceeding.*" (Citation omitted; emphasis added.) Id. This court explained, "[i]t is well settled that our scope of review of a trial court's determination on a motion for summary judgment is plenary. . . . [In a case], as here, [in which] the trial court ruled the expert's testimony inadmissible in the course of summary judgment proceedings, it would be inconsistent with that plenary scope of review to subject a particular subset of the trial court's determinations in those proceedings, *namely, the admissibility of an expert's opinion*, to the highly deferential abuse of discretion

scope of appellate review." (Citation omitted; emphasis added.) Id., 610–11. This court further noted, "because the movant in a summary judgment proceeding has the burden to show that there is no genuine issue of fact and the facts are to be viewed in the light most favorable to the nonmoving party, a trial court in such a proceeding would be obligated to exercise its discretion in favor of the nonmoving party's offer of evidence. Similarly, in applying our plenary scope of review to the question of the admissibility of [the expert witness'] testimony, the same considerations compel us to resolve any doubts about that question in favor of admissibility." Id., 611.[18]

In *Fortin*, the plaintiffs initiated a civil action against the defendants, North River Insurance Company (North River) and Hartford Underwriters Insurance Company (Hartford). *Fortin* v. *Hartford Underwriters Ins. Co.*, supra, 139 Conn. App. 829 and n.1. The plaintiffs alleged that they had purchased liability insurance policies from each of the insurance companies. Id., 830. Pursuant to its policy, Hartford agreed to defend the plaintiffs in specific legal actions and to pay certain damages resulting therefrom, and, pursuant to its policy, North River provided umbrella coverage above and beyond the policy issued by Hartford. Id. The plaintiffs alleged that they had been named as third-party defendants in a separate action, which they contended "gave rise to coverage under the policies"; id.; but that Hartford declined to provide representation to the plaintiffs or to indemnify them for the financial obligations they incurred as a result of the action, and North River declined to participate in settlement negotiations in the separate action on their behalf or to contribute moneys toward the plaintiffs' settlement obligation. Id., 830–31. After the parties to the separate action settled, the plaintiffs subsequently sued the insurance companies for, inter alia, breach of contract. Id., 831.

The plaintiffs disclosed an expert witness, whom they asserted would opine as to, inter alia, the objective reasonableness of the settlement amount paid by the plaintiffs—an essential element of their case against North River. Id., 832–33, 837. In response, North River filed two motions: a motion to preclude the plaintiff's expert witness from testifying, in which it argued, inter alia, that the opinion of the plaintiff's expert witness was based on insufficient facts, and a motion for summary judgment, in which it argued that the plaintiffs were unable to prove an essential element of their case—that the settlement amount was unreasonable. Id., 832. "The [trial] court considered [North River's] motion to preclude in the context of a hearing on the motion for summary judgment . . . [and ultimately] granted both . . . motions." Id., 832–33. The court determined that the expert witness' testimony was inadmissible because "the plaintiffs were unable to demonstrate that [the expert witness'] opinion was based on

sufficient facts and, thus, that his testimony would assist the trier of fact in understanding the evidence or in determining the objective reasonableness of the settlement paid by the plaintiffs." Id., 833. The court consequently concluded that, because the plaintiffs had failed to present expert evidence demonstrating that the settlement amount was objectively reasonable, summary judgment in favor of North River was warranted. See id.

On appeal, this court first set forth the applicable standard of review. See id. This court noted that the plaintiffs "urge[d]" it to apply the plenary standard of review; id., 834 n.4; enunciated in *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 610–11, and North River urged it "not to apply the plenary standard of review . . . ." *Fortin* v. *Hartford Underwriters Ins. Co.*, supra, 139 Conn. App. 834–35 n.4. This court observed that, in *DiPietro*, it had concluded "that its [determination as to the proper standard of review in this context] was consistent with Connecticut's summary judgment jurisprudence." Id., 835 n.4. Thus, this court determined, "*DiPietro*'s relevant [analysis] govern[ed] the legal standard by which a court should evaluate a motion to preclude in conjunction with a motion for summary judgment." Id., 836 n.4.

Because the trial court had ruled the expert's testimony inadmissible within the context of the summary judgment proceedings, this court determined that the proper standard of appellate review was plenary. See id., 833–34. Accordingly, viewing the record "in the light most favorable to the plaintiffs"; id., 840; this court concluded that the expert did not have an "adequate factual basis [on] which to . . . [base an] opinion concerning the reasonableness of the settlement," and, thus, the trial court "properly [had] precluded" the expert witness' opinion. Id.

Significantly, and as the plaintiff conceded during oral argument before this court, the trial courts in *DiPietro* and *Fortin* had not precluded the plaintiffs' expert witnesses from testifying as a discovery sanction for the plaintiff's failure to comply with the disclosure rules set forth in Practice Book § 13-4. By contrast, in both *DiPietro* and *Fortin*, the courts precluded the testimony of the plaintiffs' expert witnesses *solely* because the opinions of the plaintiffs' expert witnesses were not based on sufficient facts. See id., 833; *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 609.

In the present case, although the court determined that Stanger's opinions were not based on sufficient facts, our thorough review of the court's memorandum of decision reveals that the court principally precluded the plaintiff's expert witness from testifying as a sanction for the plaintiff's noncompliance with the disclosure requirements set forth in Practice Book § 13-4. As

we have explained, the court stated in its memorandum of decision that it was "mindful" that its decision to preclude the plaintiff from presenting expert testimony would be a "severe sanction . . . ." The court further emphasized that the plaintiff had failed to comply with the disclosure requirements set forth in § 13-4 and, consequently, considered whether, pursuant to § 13-4 (h), it should impose on the plaintiff the sanction of preclusion of the expert testimony. The court specifically considered whether the sanction was "proportional to [the plaintiff's] noncompliance" with the disclosure requirements of § 13-4 and whether the plaintiff's noncompliance with the disclosure requirements otherwise could be addressed adequately by a less severe sanction or combination of sanctions. The court determined that Stanger's lack of knowledge as to the pertinent facts of the prior action evidenced the discovery abuse in which the plaintiff had engaged—specifically, eventually disclosing Stanger as an expert witness but keeping Stanger uninformed as to the pertinent facts of the case to prevent the defendant from conducting meaningful discovery.

Ultimately, the court concluded that, in light of the discovery abuses in which the plaintiff engaged, including but not limited to his attempt to keep his own expert uneducated about the facts underlying the matter, the sanction of preclusion was proportionate to the plaintiff's failure to timely comply with the requirements of Practice Book § 13-4, and the plaintiff's noncompliance otherwise could not be addressed adequately by a less severe sanction or combination of sanctions. Thus, the court exercised its discretion in determining that the sanction of preclusion was justified pursuant to § 13-4 (h). Accordingly, we conclude that the case before us is distinguishable from *DiPietro* and *Fortin* because, in the present case, the court treated in large part its decision to preclude the plaintiff's expert witness from testifying as a sanction for the plaintiff's failure to comply with the disclosure requirements of § 13-4. To review this decision on a plenary basis simply because it was made at or about the time the court adjudicated the defendant's motion for summary judgment would deprive the court of its discretion, or severely curtail the court's discretion, to govern effectively the discovery process, supervise the conduct of the litigants, and manage its dockets. We therefore decline to extend *DiPietro* and *Fortin* to the circumstances of this case.[19]

It is well accepted that "we . . . [review] the action of the trial court in imposing sanctions for failure to comply with its orders regarding discovery under a broad abuse of discretion standard." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 15, 776 A.2d 1115 (2001); see also *Vitali* v. *Southern New England Ear, Nose, Throat & Facial Plastic Surgery Group, LLP*, 153 Conn. App. 753, 757, 107 A.3d 422 (2014) (trial court's "decision to impose sanctions,"

including sanction of "preclusion of expert testimony . . . rests solely in the discretion of the court"). "As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In reviewing a claim that the court has abused this discretion, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented. Never will the case on appeal look as it does to a [trial court] . . . faced with the need to impose reasonable bounds and order on discovery." (Citations omitted; internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 15–16. "Under an abuse of discretion standard, a court's decision must be legally sound and [the court] must [have] honest[ly] attempt[ed] . . . to do what is right and equitable under the circumstances of the law, without the dictates of whim or caprice." (Internal quotation marks omitted.) *Vitali* v. *Southern New England Ear, Nose, Throat & Facial Plastic Surgery Group, LLP*, supra, 757.

We now turn to the merits of the plaintiff's claim. The plaintiff contends that the sanction of preclusion was not proportionate to his noncompliance with the expert disclosure requirements set forth in Practice Book § 13-4 and that his "alleged" noncompliance adequately could have been addressed by a less severe sanction. The plaintiff argues that, at the time the court imposed the sanction in its decision dated September 1, 2020, he had disclosed Stanger as an expert witness in the expert disclosure he had filed on October 18, 2019. The plaintiff further asserts that the defendant "was not prejudiced" by any noncompliance on the plaintiff's part because the defendant "had a meaningful opportunity to depose [Stanger as to] the basis [of Stanger's] opinions." Finally, the plaintiff argues that, as a less severe sanction, the court could have precluded "only the testimony and opinions that it believed were not . . . based [on sufficient] . . . facts." We are not persuaded.

As we have explained, Practice Book § 13-4 (h) provides a trial court with the authority to "impose sanctions on a party for [the party's] failure to comply with the" disclosure requirements set forth in § 13-4, such as the requirement that a party must disclose the expert witnesses it may call to testify at trial; see Practice Book § 13-4 (a); or the requirement that a party must file an expert disclosure identifying, inter alia, the expert witness, the subject matter on which the expert is expected to testify, and the substance of the grounds for each expert opinion. See Practice Book § 13-4 (b)

(1). "An order precluding the testimony of an expert witness, [however] may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions." Practice Book § 13-4 (h). As our Supreme Court has reiterated, "the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 18. In considering whether the sanction was proportional to the plaintiff's failure to comply with the disclosure requirements set forth in § 13-4 and his discovery abuse, we are guided by "the factors [our Supreme Court] . . . ha[s] employed when reviewing the reasonableness of a trial court's imposition of sanctions: (1) the cause of the [party's] failure to [comply with the disclosure rules and the party's discovery abuse], that is, whether it [was] due to inability rather than the [wilfulness], bad faith or fault of the [party] . . . (2) the degree of prejudice suffered by the opposing party . . . and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." (Internal quotation marks omitted.) *Lafferty* v. *Jones*, 336 Conn. 332, 375, 246 A.3d 429 (2020), cert. denied,      U.S.     , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021).

We also note that, pursuant to § 7-2 of the Connecticut Code of Evidence, "[a] witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 313 Conn. 405–406. "An expert may testify in the form of an opinion and give reasons therefor, *provided sufficient facts are shown as the foundation for the expert's opinion.*" (Emphasis added.) Conn. Code Evid. § 7-4 (a). Thus, "[t]o render an expert opinion the witness must be qualified to do so *and there must be a factual basis for the opinion.*" (Emphasis added; internal quotation marks omitted.) *Weaver* v. *McKnight*, supra, 406. Accordingly, this court has stated, "[t]he essential facts on which an expert opinion is based are an important consideration in determining the admissibility of the

expert's opinion." *Glaser* v. *Pullman & Comley, LLC*, 88 Conn. App. 615, 624, 871 A.2d 392 (2005).

In a case in which "the factual basis of an [expert witness'] opinion is challenged the question before the court is whether the uncertainties in the essential facts on which the opinion is predicated are such as to make an opinion based on them without substantial value." (Internal quotation marks omitted.) *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 244, 963 A.2d 943 (2009). For example, this court has determined that the opinions of a purported expert witness, whose testimony was based on "speculation" and who "lack[ed] [sufficient] personal knowledge . . . of the facts" on which he based his opinions; *Porter* v. *Thrane*, 98 Conn. App. 336, 341, 908 A.2d 1137 (2006); were "without substantial value." Id., 340.

Turning to the present case, the court determined that the plaintiff failed to comply with the disclosure requirements set forth in Practice Book § 13-4 and, instead, engaged in a course of conduct that rose to a discovery abuse. The court noted that the plaintiff had filed an expert disclosure on October 18, 2019, two weeks after the October 4, 2019 deadline set by the court's scheduling order, and years after the previous deadlines of August 8, 2016, and September 7, 2018. In addition to the plaintiff's historical failure to comply with the court's scheduling orders in filing the disclosure, the court stated that, within the disclosure, the plaintiff had failed to set forth any expert opinion as to the legal malpractice elements of causation and damages, as required by Practice Book § 13-4 (b), and at no point did the plaintiff supplement the disclosure to add such opinions, despite having "ample opportunity" to do so during the pendency of the action. Likewise, the plaintiff had failed to provide the substance of the grounds for each of the disclosed opinions, as required by § 13-4 (b). Instead, the plaintiff merely provided that Stanger's opinions would be "based [on] his knowledge of the case from review of the [prior action] and his experience as an attorney admitted in Connecticut."

More significantly, however, the court determined that the plaintiff had committed what amounted to a discovery abuse by engaging in a particular course of "gamesmanship" that prevented the defendant from completing meaningful discovery. In particular, although the plaintiff eventually "disclosed" Stanger as an expert witness—albeit outside of each of the deadlines to do so—counsel for the plaintiff prevented Stanger from learning the pertinent facts of the prior action during the entirety of his involvement as an expert witness in the present action. The court noted that, at the time the plaintiff had disclosed him as an expert witness, Stanger had not been provided the file from the prior action and, thus, could not have based the expert opinion disclosed in the disclosure on his

independent review of the file. Additionally, in his affidavit dated January 20, 2020, Stanger averred that he had reviewed only a few select materials before developing his opinions—specifically, the "appellate decisions," the "complaints," and "portions of the present [action]"—and that his opinions largely were based on "the facts [he] expected [would be brought out] at trial," as opposed to facts that he himself had gleaned from independently reviewing the record.

The court confirmed, by reviewing the transcripts of Stanger's deposition, that Stanger possessed a limited understanding of the prior action because counsel for the plaintiff had curtailed Stanger's review of the record in the prior action. As the court stated, counsel for the plaintiff had "authorized" Stanger to review only a limited portion of the available materials before he testified and instructed Stanger "not to spend . . . too much time" on the matter. Consequently, Stanger admitted during his deposition that he did not review a myriad of materials associated with the prior action, including the following: the transcripts from the depositions taken in connection with the prior action, the trial transcripts from the prior action—apart from "[seeing] one page" from a deposition transcript, the date and the content of which he could not identify when he was deposed—the deposition exhibits, trial exhibits, discovery materials, and expert reports from the prior action, the hospital bylaws—apart from the portions reprinted in the plaintiff's complaint and the decisions he reviewed—the minutes of the hospital meetings during which the medical staff decided not to renew the plaintiff's hospital privileges, the defendant's bills from the defendant's representation of the plaintiff in the prior action, and the communications between the parties in the present action. Stanger also testified that he had not spoken with any individuals about the prior action, including the expert witnesses called to testify at trial in the prior action, aside from counsel for the plaintiff. As the court additionally noted, Stanger repeatedly acknowledged during both days of the deposition that, although he had received the file from the defendant's representation of the plaintiff in the prior action, which he testified consisted of sixteen boxes of materials, he did not "substantively review" any of the materials in the file and would not do so until he was "authorized to do" so by counsel for the plaintiff.

As the court further emphasized, Stanger testified that he had based his opinions on the facts that counsel for the plaintiff hoped to prove at trial and that counsel for the plaintiff instructed Stanger he could "assume" existed, as opposed to the facts he gleaned from his own independent review of the record. For example, when counsel for the defendant asked Stanger "[h]ow heinous" the hospital's conduct was in the prior action, Stanger replied, "I've been told to *assume* that it was heinous"; (emphasis added); and when counsel for the

defendant asked Stanger to identify the immoral, unethical, oppressive, or unscrupulous conduct that the hospital allegedly had committed in contravention of CUTPA, Stanger stated that he "just was told that" the conduct existed and that he was "sure [that evidence thereof was] in [the] [sixteen] boxes" of materials in the file he did not review. Likewise, during the first day of the deposition and in connection with his opinion that it was "more likely than not" that the plaintiff could have prevailed on a CUTPA claim had one been pursued in the prior action, Stanger stated that counsel for the plaintiff told him "that [he] [could] assume" that certain laws—which he could not identify without his memory being "refreshed" by counsel citing to him the statutory sections—existed that the hospital had violated such that a CUTPA claim would have been successful if it had been brought against the hospital. As the court noted, "Stanger testified that his opinions [were] based on his belief that [the] facts alleged in the [plaintiff's] complaint in the [prior action] would have supported" a CUTPA claim and that such a claim would have been successful, so long as "there was evidence to support" it.[20]

Additionally, the court explained that, although the plaintiff eventually disclosed Stanger as his expert witness, the plaintiff "delay[ed] and limit[ed] . . . Stanger's review of the [file]" and other salient materials such that, on the two days on which he was deposed, Stanger possessed only a cursory understanding of the relevant facts of the prior action and was required to base his opinion on his assumptions that counsel for the plaintiff assured him would be proven at trial. Thus, from the time Stanger was disclosed as an expert witness, through his deposition, Stanger remained unapprised of the pertinent facts of the prior action, at the behest of counsel for the plaintiff, such that his expert opinion lacked the necessary factual basis. See, e.g., *Weaver* v. *McKnight*, supra, 313 Conn. 406 ("[t]o render an expert opinion the witness must be qualified to do so *and there must be a factual basis for the opinion*" (emphasis added; internal quotation marks omitted)). The court stated that "[the] plaintiff's plan appeared to be to delay educating [Stanger as to the pertinent facts of the prior action] until trial and to delay [Stanger from] review[ing] and analy[zing] [the] material evidence until trial . . . ." Accordingly, the court determined, the plaintiff had engaged in a course of "gamesmanship" that "thwarted" the defendant's ability to ascertain what Stanger likely would opine at trial and, consequently, impeded the defendant from completing "meaningful discovery" with respect to the expert testimony the plaintiff likely would elicit at trial.

Once it had identified the plaintiff's noncompliance and discovery abuse, the court considered whether the sanction of preclusion, which it recognized was a "severe" sanction, was proportional to the plaintiff's

noncompliance and discovery abuse. The court highlighted the fact that the trial date had been continued for the eighth time—including to account for the plaintiff's failure to timely disclose an expert witness, which caused the delay of the trial date from August 21, 2019, to February 4, 2020.[21] The court stated that the plaintiff had "ample opportunity" during the lengthy pendency of the present action to disclose a prepared, informed expert or to ensure that Stanger was apprised of the facts pertinent to the prior action such that Stanger's opinion, as represented in the disclosure, was informed by sufficient facts and such that Stanger could provide an informed expert opinion at the time he was deposed. Instead, the court noted, the plaintiff engaged in a pattern of game-playing by disclosing an expert witness while simultaneously preventing that expert from reviewing the file—to which the expert had access— so that the defendant would remain uninformed as to the factual and legal basis of the expert's opinion until trial. This strategy, the court stated, could have resulted in further delay of the trial date to allow the defendant the opportunity to conduct meaningful discovery or in the defendant's being ambushed by a "newly informed expert" witness at trial. The court likened failing to impose a sanction on the plaintiff to "[r]ewarding [the plaintiff's apparent] strategy of unduly limiting expert preparation . . . ." To reward such a strategy, the court noted, would be to "encourage" parties to disclose uninformed expert witnesses "willing to parrot the pleadings without independent[ly] review[ing] and anal[yzing] . . . the . . . [pertinent] evidence" from the prior action so that the party could comply technically with the disclosure requirements while simultaneously preventing the opposing party from engaging in meaningful discovery as to the expert witness' true opinion.

The court also concluded that a less severe sanction or combination of sanctions could not address adequately the plaintiff's noncompliance. The court noted that allowing Stanger more time to review the file, after the trial date had been scheduled and rescheduled eight times and in light of the fact that Stanger did not review the file during the two months between the first and second days of his deposition, would "not [be] an adequate sanction" because such a continuance likely would require the defendant to conduct additional discovery once Stanger became apprised of the salient facts of the case. The court further noted that continuing the trial date to provide Stanger additional time to review the file would have the practical effect of "[r]ewarding" the plaintiff's gamesmanship. The court also considered whether providing the plaintiff the opportunity to disclose another expert would serve as an adequate sanction and rejected the option, stating that it was "far too late" to do so and, again, would have the practical effect of "[r]ewarding" the plaintiff's pattern of game-playing.[22]

On the basis of the record before it, the court reasonably could have concluded, as it did; see *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 15; that the sanction of preclusion of expert testimony was proportional to the plaintiff's noncompliance with the disclosure rules set forth in Practice Book § 13-4 and his pattern of gamesmanship, which rose to a discovery abuse. The court likewise reasonably could have concluded, as it did, that the plaintiff's noncompliance and discovery abuse could not adequately be addressed by a less severe sanction or combination of sanctions. Thus, we cannot conclude that the court abused its discretion in so determining.

II

The plaintiff additionally claims that the court improperly granted the defendant's motion for summary judgment. In connection with this claim, the plaintiff first argues that, when it rendered summary judgment in favor of the defendant, the court improperly failed to consider Stanger's deposition testimony. As we have explained; see part I of this opinion; the court properly precluded Stanger's testimony as a sanction for the plaintiff's noncompliance with the disclosure requirements set forth in Practice Book § 13-4 and the plaintiff's discovery abuses. Accordingly, we reject this argument.

The plaintiff also contends that, even if the court properly precluded Stanger's testimony, genuine issues of material fact nonetheless exist as to the legal malpractice elements of causation and damages. We note that, in so arguing, the plaintiff nonetheless cites several of the opinions that Stanger articulated during his deposition and relies on these opinions as evidence of the alleged genuine issues of material fact.

"In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Grimm* v. *Fox*, supra, 303 Conn. 329. As the plaintiff acknowledges in his principal appellate brief, "[a]s a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care [an attorney must exercise]. . . . The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury . . . to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard."[23] (Internal quotation marks omitted.) Id., 329–30.

"[E]xpert testimony also is a general requirement for establishing the element of causation in legal malpractice cases." *Bozelko* v. *Papastavros*, supra, 323 Conn. 285.[24] With respect to the causation element, "the plain-

tiff typically proves that the . . . attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the [prior] action had the [attorney] not been negligent. This traditional method of presenting the merits of the [prior] action is often called the case-within-a-case. . . . [T]he plaintiff must prove that, in the absence of the alleged breach of duty by [his or] her attorney, the plaintiff would have prevailed [in] the [prior] cause of action and would have been entitled to judgment. . . . To meet this burden, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the [prior] action." (Citations omitted; internal quotation marks omitted.) Id., 284. Put differently, the plaintiff generally must present expert testimony to "establish that the defendant's conduct legally caused the injury of which [he] complain[s]." (Internal quotation marks omitted.) *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 750, 87 A.3d 1134, cert. denied, 311 Conn. 944, 90 A.3d 975 (2014).

In the present case, the plaintiff alleged that the defendant committed professional negligence by failing to bring on his behalf claims of CUTPA violations and tortious interference with business expectancies against the hospital in the prior action. Thus, to prevail in the present action, the plaintiff was required to "[present] the merits of the [prior] action," or the "case-within-a-case," as to either of those causes of action. (Internal quotation marks omitted.) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284. Put differently, the plaintiff was required to prove that, had the defendant brought on his behalf claims of CUTPA violations and tortious interference with business expectancies against the hospital in the prior action, he would have prevailed on either cause of action. See id.

"[W]e [first] set forth the legal standard that governs CUTPA claims. . . . [General Statutes §] 42-110b (a) provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . [I]n determining whether a practice violates CUTPA [our Supreme Court has] adopted the criteria set out in the cigarette rule by the [F]ederal [T]rade [C]ommission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because

to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . In order to enforce this prohibition, CUTPA provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice . . . ." (Footnote omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 310 Conn. 409–10. Thus, to meet his burden in the present action of establishing the "case-within-a-case" with respect to CUTPA; (internal quotation marks omitted) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284; the plaintiff was required to establish the elements of CUTPA, including "an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 409.

Although "a breach of contract may form the basis for a CUTPA claim"; id., 410; "not every contractual breach rises to the level of a CUTPA violation." (Internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010). "CUTPA was intended to provide a remedy that is *separate and distinct* from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances." (Emphasis added.) *Ulbrich* v. *Groth*, supra, 310 Conn. 411. Thus, to meet his burden in the present action of establishing the "case-within-a-case" with respect to CUTPA; (internal quotation marks omitted) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284; the plaintiff was required to show that he was entitled to additional relief in the prior action, above and beyond the damages award he received in connection with his prevailing on the breach of contract claim. See *Ulbrich* v. *Groth*, supra, 411. Further, because, "[i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights"; (internal quotation marks omitted) id., 446; the plaintiff likewise was required to show that the defendant exhibited a reckless indifference to, or an intentional and wanton violation of, the plaintiff's rights to establish that the plaintiff would have received punitive or exemplary damages in the prior action. See id.

We next set forth the legal standard that governs a claim of tortious interference with business expectancies. "[I]n order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual

loss. . . . [I]t is an essential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 32–33, 761 A.2d 1268 (2000). Thus, to meet his burden in the present action of establishing the "case-within-a-case" with respect to tortious interference with business expectancies; (internal quotation marks omitted) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284; the plaintiff was required to establish each of the aforementioned elements of tortious interference with business expectancies. See id.

Finally, we note that "summary judgment [is] proper when [a] plaintiff alleging legal malpractice fails to establish [his] claim by expert testimony." (Internal quotation marks omitted.) *Grimm* v. *Fox*, supra, 303 Conn. 330. "Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010).

We have determined that the court properly precluded the admission of the testimony of Stanger. Consequently, the plaintiff failed to present expert testimony regarding several material issues, including the applicable standard of care that the defendant owed to the plaintiff in his representation of him and whether he breached that standard of care; see *Grimm* v. *Fox*, supra, 303 Conn. 329–30; by not initiating on behalf of the plaintiff a CUTPA or tortious interference with business expectancies claim against the hospital in the prior action—particularly in light of the fact that the plaintiff already had prevailed on a breach of contract count against the hospital in the prior action and recovered $258,610 plus costs. Further, the plaintiff was unable to present expert testimony as to the causation element; see *Cammarota* v. *Guerrera*, supra, 148 Conn. App. 750; and to establish the "case-within-a-case" required to prevail on his legal malpractice claims. (Internal quotation marks omitted.) *Bozelko* v. *Papastavros*, supra, 323 Conn. 284. Put differently, the plaintiff could not present expert testimony as to the elements of CUTPA, including whether the defendant's actions qualified as " 'unfair' " pursuant to the cigarette rule;[25] *Ulbrich* v. *Groth*, supra, 310 Conn. 409; and whether he was entitled to additional relief above and beyond the damages he recovered for breach of contract. See id., 446. The plaintiff likewise could not present expert testimony as to the elements of tortious interference with business expectancies. See *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, supra, 255 Conn. 32–33. In light of the fact that the plaintiff was unable to present expert testimony as to the foregoing material issues, which the plaintiff was "required [to present] to establish a prima facie case of legal malpractice . . . the [defendant was] entitled to judgment as a matter

of law." (Citation omitted.) *Grimm* v. *Fox*, supra, 337.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 13-4, titled "Experts," provides in relevant part: "(a) A party shall disclose each person who may be called by that party to testify as an expert witness at trial . . . .

"(b) A party shall file with the court and serve upon counsel a disclosure of expert witnesses which identifies the name, address and employer of each person who may be called by that party to testify as an expert witness at trial, whether through live testimony or by deposition. In addition, the disclosure shall include the following information:

"(1) . . . [T]he field of expertise and the subject matter on which the witness is expected to offer expert testimony; the expert opinions to which the witness is expected to testify; [and] the substance of the grounds for each such expert opinion . . . .

"(3) . . . [T]he party disclosing an expert witness shall, upon the request of an opposing party, produce to all other parties all materials obtained, created and/or relied upon by the expert in connection with his or her opinions in the case within fourteen days prior to that expert's deposition . . . .

"(c) (1) Unless otherwise ordered by the judicial authority upon motion, a party may take the deposition of any expert witness disclosed pursuant to subsection (b) of this section . . . .

"(h) A judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. An order precluding the testimony of an expert witness may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions. . . ."

[2] The plaintiff also argues that the court improperly determined that Stanger was not qualified to offer an expert opinion as to the elements of legal malpractice or the likelihood of success of a claim under the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; or a tortious interference with business expectancies claim had the plaintiff brought either claim against the hospital in the prior action. As we note later in this opinion; see footnote 15 of this opinion; it is unclear whether the court, in its memorandum of decision, conflated the requirement that an expert witness be qualified to render an expert opinion with the requirement that there be a factual basis for the opinion; see Conn. Code Evid. §§ 7-2 and 7-4; *Weaver* v. *McKnight*, 313 Conn. 393, 406, 97 A.3d 920 (2014); or, instead, whether the court independently determined that Stanger was not qualified to render an expert opinion. Nonetheless, because we conclude that the court properly precluded Stanger's testimony on other grounds, we need not consider whether the court improperly concluded that Stanger was unqualified to offer expert testimony.

[3] "In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) *causation*; and (4) *damages*." (Emphasis added; internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 329, 33 A.3d 205 (2012).

[4] The plaintiff additionally named as defendants in the prior action the president of the hospital, certain hospital administrators, and certain hospital physicians. See *Gianetti* v. *Norwalk Hospital*, 211 Conn. 51, 52 and n.1, 557 A.2d 1249 (1989).

[5] Between March 11, 1987, the date of the release of the attorney trial referee's report, and July 18, 1993, the date on which the court accepted the attorney trial referee's report, the parties filed a joint motion for reservation of legal issues, pursuant to General Statutes § 52-235, arising out of certain issues raised in the attorney trial referee's report. *Gianetti* v. *Norwalk Hospital*, supra, 211 Conn. 53 and n.2. In the motion, the parties sought advice from this court as to certain questions of law. Id., 53 n.2. Our Supreme Court "transferred [the matter] to itself on April 14, 1988"; id.; and, on April 25, 1989, released a decision in which it resolved the legal questions presented by the parties. See id., 66–67. The matter subsequently was returned to the trial court. See *Gianetti* v. *Norwalk Hospital*, Superior Court, judicial district of Fairfield, Docket No. CV-84-0214340-S (September 9, 1999), rev'd on other grounds, 64 Conn. App. 218, 779 A.2d 847 (2001), rev'd

in part, 266 Conn. 544, 833 A.2d 891 (2003).

[6] In its decision released on May 15, 2012, our Supreme Court affirmed this damages award. See *Gianetti* v. *Norwalk Hospital*, supra, 304 Conn. 819.

[7] In his answer, the defendant raised one special defense—that the plaintiff's claims of legal malpractice were time barred by the applicable three year statute of limitations. See General Statutes § 52-577. On January 8, 2018, and after the case had been scheduled for trial, the defendant moved for summary judgment, arguing that the plaintiff's claims of legal malpractice were time barred. The court denied the defendant's motion for summary judgment on June 12, 2018, on the procedural basis that the applicable scheduling order required that motions for summary judgment be filed no later than September 30, 2016, and the defendant had not filed with the court a motion for permission to file his late motion for summary judgment, despite the fact that the case already had been assigned for trial. See Practice Book § 17-44 ("[i]f no scheduling order exists but the case has been assigned for trial, a party must move for permission of the judicial authority to file a motion for summary judgment").

[8] The defendant specifically argued that the plaintiff had failed to satisfy the requirements set forth in Practice Book § 13-4 (a) and (b) (1). As we have explained; see footnote 1 of this opinion; § 13-4 (a) requires a party to disclose "each person who may be called by that party to testify as an expert witness at trial." Section 13-4 (b) (1) requires the party to file an expert witness disclosure, in which the party must identify the expert witnesses he may call and specify the "field of expertise and the subject matter on which the witness is expected to offer expert testimony; the expert opinions to which the witness is expected to testify; [and] the substance of the grounds for each such expert opinion."

[9] As the parties explained in a joint motion to modify the scheduling order that the court, *Genuario, J.*, granted on May 30, 2019, counsel for the plaintiff in the present action, Attorney Michael Kogut, was suspended from the practice of law on July 31, 2018. The plaintiff subsequently hired Attorney Kenneth A. Votre to represent him in the present action, and Votre appeared on the plaintiff's behalf on October 25, 2018.

[10] Stanger testified, however, that he merely "skimmed" one decision of this court in the prior action.

[11] When he was asked to identify the doctors, Stanger responded, "I assume—*again, assume*—[the doctors are] the other defendants . . . [named] in the complaint . . . filed" by the plaintiff in the prior action. (Emphasis added.)

[12] On January 17, 2020, the plaintiff filed a motion for a continuance of the hearing on the defendant's motions, as well as a case flow request requesting the same. The court denied the plaintiff's continuance motion and case flow request on January 21, 2020.

[13] Specifically, the following colloquy occurred between counsel for the plaintiff and Stanger:

"[The Plaintiff's Counsel]: . . . I know when you were being [questioned by counsel for the defendant], an issue came up about a state statute. Is that correct?

"[Stanger]: Two state statutes.

"[The Plaintiff's Counsel]: Okay, and I know you didn't remember the state statutes. If I told you it was [General Statutes §§] 20-13[d] and 20-13[e], would that refresh your recollection? . . .

"[Stanger]: . . . Yes, it does."

[14] After confirming with Stanger that he had not reviewed any of the defendant's bills in the prior action, counsel for the defendant asked Stanger whether "somebody [else had] told" Stanger that the defendant's attorney's fees totaled $800,000. Stanger testified, "I think [the $800,000 value is] in the complaint that was filed in [the present] action."

We note that, in his principal appellate brief to this court, the plaintiff likewise asserted that, "[o]ver the course of the [pendency of the prior action], [the plaintiff] paid [the defendant] over eight hundred thousand dollars ($800,000) in legal fees, costs, and expenses . . . ." (Footnote omitted.) To support this assertion, the plaintiff merely cited to the operative complaint in the present action—namely, the allegation in his complaint that, "over the course of [the pendency of the prior action], [the plaintiff] was billed and paid the defendant nearly eight hundred thousand ($800,000) dollars in legal fees, costs, and expenses."

[15] The court also stated that Stanger "lack[ed] . . . knowledge concerning the law to be applied to the facts relating to the CUTPA claim and . . . general[ly] lack[ed] . . . experience litigating CUTPA claims." It is unclear

whether, by this statement, the court concluded that Stanger was unqualified to render expert opinions or instead conflated the requirements that an expert witness be qualified "by knowledge, skill, experience, training, education or otherwise"; Conn. Code Evid. § 7-2; and that "there . . . be a factual basis for the [expert witness'] opinion[s]." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 406, 97 A.3d 920 (2014). Because we conclude that the court properly determined that Stanger's testimony should be precluded on other grounds, we need not consider whether the court properly determined that Stanger was unqualified to render expert opinions, to the extent that it made such a finding. See footnote 2 of this opinion.

[16] Between May 14, 2015, and September 1, 2020, the court scheduled trial for the following dates: April 25, 2017; November 28, 2017; July 16, 2018; February 26, 2019; June 4, 2019; August 21, 2019; February 4, 2020; and October 6, 2020.

[17] Although the court recognized that "[s]ome of the delay [of the trial date was] attributable to the substitution of [the plaintiff's] counsel . . . the delay of trial from August 21, 2019, to February 4, 2020," was caused by the plaintiff's failure to timely disclose an expert.

[18] Following the release of this court's decision in *DiPietro*, our Supreme Court "granted the defendants' petition for certification to appeal . . . [as to the following question: *whether this court*] *properly rule*[*d*] *that plenary review applied to the trial court's decision concerning the admissibility of expert testimony in a summary judgment motion* . . . ." (Emphasis added; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 111 n.2, 49 A.3d 951 (2012). Our Supreme Court, however, ultimately "[did] not reach [this] certified [issue] because . . . [it] conclude[d] that, despite the trial court's stated concerns as to the admissibility of the expert's opinion, the court did consider [the expert's opinion] in ruling on the defendants' motions for summary judgment but found it to be substantively insufficient." Id.

[19] We note that, in his appellate briefs to this court, the plaintiff additionally argues that the trial court applied the wrong legal standard when it reviewed the evidence in deciding the defendant's motion to preclude Stanger's expert testimony. Specifically, the plaintiff asserts that, because the court decided the defendant's motion to preclude in connection with the defendant's motion for summary judgment, the court was required to construe "the facts . . . in the light most favorable to [the plaintiff as] the nonmoving party . . . [and] exercise its discretion in favor of the nonmoving party's offer of evidence." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, supra, 139 Conn. App. 834. Because we have concluded that, unlike in *Fortin* and *DiPietro*, the court in the present case treated its preclusion of Stanger's testimony in large part as a sanction for the plaintiff's failure to comply with the expert disclosure requirements of Practice Book § 13-4, we conclude that the court in the present case was not obligated to employ the standard governing a trial court's decision on a motion for summary judgment when it decided the defendant's motion to preclude Stanger's expert testimony.

[20] In light of Stanger's deposition testimony, the court determined that Stanger's expert opinion lacked substantial value because it was "untethered to facts" in the record. The plaintiff contends that the court improperly determined that the plaintiff's opinions were not based on sufficient facts. The plaintiff specifically argues that Stanger testified during his deposition that the materials he reviewed and on which he based his expert opinion—specifically, the judicial decisions from the prior action and the allegations contained in the plaintiff's complaint in the prior action—provided him the necessary factual basis from which to develop an informed expert opinion.

As we have explained, overwhelming evidence exists in the record to support the court's determination that Stanger possessed limited knowledge of the pertinent facts of the prior action and that Stanger relied on the representations made by counsel for the plaintiff, instead of independently gleaning the pertinent facts from the record, in coming to his expert opinion. Based on this overwhelming evidence, we conclude that the court reasonably could have concluded, as it did, that Stanger's opinions were not based on sufficient facts. See *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 15. Thus, we cannot say that the court abused its discretion by determining that "the uncertainties in the essential facts"; (internal quotation marks omitted) *Wyszomierski* v. *Siracusa*, supra, 290 Conn. 244; on which Stanger based his opinions, rendered his opinions to be without substantial value.

We note that, even if we were to exercise plenary review over this argument, we nonetheless would reach the same conclusion as did the trial court. Significantly, we agree with the court that the evidence is clear that Stanger failed to review the necessary materials to educate himself about the facts of the prior action. Instead, Stanger accepted as true the allegations made in the plaintiff's complaint. Accordingly, Stanger lacked a substantial factual basis on which to evaluate the merits of and opine as to the plaintiff's allegations of legal malpractice. See Conn. Code Evid. § 7-4 (a) (permitting "[a]n expert [to] testify in the form of an opinion . . . *provided sufficient facts are shown as the foundation for the expert's opinion*" (emphasis added)).

[21] The plaintiff argues in his principal appellate brief that the sanction of preclusion was not proportional to his noncompliance because, when the court released its decision on September 1, 2020, "there was no trial date looming due to the" coronavirus pandemic. We acknowledge that, despite the fact that the trial had been scheduled to commence on October 6, 2020, jury trials were suspended at the time the court imposed the discovery sanction on the plaintiff in its memorandum of decision due to the coronavirus pandemic. Specifically, the Judicial Branch suspended civil jury trials in March, 2020, through the end of the 2020 calendar year and into the 2021 calendar year.

The fact, however, that jury trials were suspended at the time the court imposed the discovery sanction does not alter the reality that the court had rescheduled the trial date eight times *before* the Judicial Branch suspended civil jury trials in March, 2020. We note that the court specifically emphasized that the trial date was delayed—*before* jury trials were suspended—from August 21, 2019, to February 4, 2020, because of the plaintiff's failure to timely disclose an expert witness.

[22] With respect to the plaintiff's argument that the court could have precluded only the testimony and opinions it believed were not based on sufficient facts, the court made clear that, in its view, Stanger's opinions as to several elements of legal malpractice—including causation—were not based on sufficient facts. Thus, even if the court precluded *only* Stanger's opinions as to the legal malpractice elements, summary judgment still would be proper because the plaintiff would be unable to prove the essential elements of his case. See, e.g., *Grimm* v. *Fox*, supra, 303 Conn. 329 ("[a]s a general rule, for the plaintiff to prevail in a legal malpractice case in Connecticut, he must present expert testimony to establish the standard of proper professional skill or care [an attorney must exercise]" (internal quotation marks omitted)); see also *Bozelko* v. *Papastavros*, supra, 323 Conn. 285 ("expert testimony also is a general requirement for establishing the element of causation in legal malpractice cases").

[23] We note that "[t]here is an exception to [the] rule [requiring the plaintiff to present expert testimony to establish the elements of legal malpractice] . . . [if] there is such an obvious and gross want of care and skill that neglect is clear even to a lay person. . . . Nevertheless, [t]he exception to the need for expert testimony is limited to situations in which the defendant attorney essentially has done *nothing whatsoever to represent his or her client's interests*." (Citation omitted; emphasis added; internal quotation marks omitted.) *Grimm* v. *Fox*, supra, 303 Conn. 330.

To the extent that the plaintiff argues generally in his principal appellate brief that the exception to the rule requiring that he present expert testimony applies in this case, at no point in his principal appellate brief does the plaintiff contend that the defendant "essentially ha[d] done nothing whatsoever to represent his . . . client's interests" in the prior action; (internal quotation marks omitted) id.; such that this exception would be applicable. Accordingly, we reject the plaintiff's argument to the extent that he made it.

[24] Our Supreme Court has recognized that "exceptions [to the requirement that a plaintiff present expert testimony to establish the causation element exist] in obvious cases"; *Bozelko* v. *Papastavros*, supra, 323 Conn. 285; such as in a case in which a New Jersey court determined that a plaintiff in a legal malpractice action need not present expert testimony to establish that an attorney "may not charge for work that has not been performed . . . [or] to establish the causal connection between [an attorney's] charge for [legal representation] services [he had] not [yet] performed [for the plaintiff] and [the plaintiff's receipt of] lesser proceeds" from a settlement check. *Sommers* v. *McKinney*, 287 N.J. Super. 1, 14, 670 A.2d 99 (App. Div. 1996); see *Bozelko* v. *Papastavros*, supra, 285 n.12 (citing *Sommers*). The plaintiff argues in his principal appellate brief that the issue of causation in the present case "is within the realm of a jury's ordinary knowledge." (Internal

quotation marks omitted.) We disagree. Whether the plaintiff in the present case would have prevailed had he pursued a CUTPA claim in the prior action does not appear to fall within the "obvious" category of cases described by our Supreme Court. *Bozelko* v. *Papastavros*, supra, 285.

[25] We note that it is doubtful that Stanger's testimony, had it not been precluded from admission at trial as a sanction for the plaintiff's noncompliance and discovery abuse, would have been sufficient to establish this element of CUTPA. During his deposition, Stanger was unable to articulate the specific conduct in which the hospital had engaged that "offend[ed] public policy . . . [was] immoral, unethical, oppressive, or unscrupulous . . . or cause[d] substantial injury to consumers, [competitors or other businesspersons]"; (internal quotation marks omitted) *Ulbrich* v. *Groth*, supra, 310 Conn. 409; and testified that counsel for the plaintiff instructed him to "assume" that such conduct existed.

––––––––––––––––––––––––––––––